Gray v Patel (2019 NY Slip Op 03031)





Gray v Patel


2019 NY Slip Op 03031


Decided on April 24, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 24, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

RUTH C. BALKIN, J.P.
CHERYL E. CHAMBERS
JEFFREY A. COHEN
VALERIE BRATHWAITE NELSON, JJ.


2016-04552
 (Index No. 702682/13)

[*1]Sara Gray, etc., et al., appellants, 
v
Nimesh Patel, etc., et al., respondents, et al., defendants.


Alan Ripka & Associates, New York, NY (Jennifer A. Fleming of counsel), for appellants.
Bower Law, P.C., Uniondale, NY (Michael J. Napoli of counsel), for respondent Nimesh Patel.
Patrick F. Adams, P.C. (Mauro Lilling Naparty, LLP, Woodbury, NY [Caryn L. Lilling and Kathryn M. Beer], of counsel), for respondents Astoria Dialysis Center and Atlantic Dialysis Management Services, LLC.



DECISION & ORDER
In an action to recover damages for medical malpractice and wrongful death, the plaintiffs appeal from an order of the Supreme Court, Queens County (Peter J. O'Donoghue, J.), dated April 3, 2016. The order granted the motion of the defendant Nimesh Patel and the separate motion of the defendants Astoria Dialysis Center and Atlantic Dialysis Management Services, LLC, for summary judgment dismissing the complaint insofar as asserted against each of them.
ORDERED that the order is modified, on the law, by deleting the provision thereof granting the motion of the defendants Astoria Dialysis Center and Atlantic Dialysis Management Services, LLC, for summary judgment dismissing the complaint insofar as asserted against them, and substituting therefor a provision denying that motion; as so modified, the order is affirmed, with one bill of costs to the plaintiffs payable by the defendants Astoria Dialysis Center and Atlantic Dialysis Management Services, LLC, and one bill of costs to the defendant Nimesh Patel payable by the plaintiffs.
The plaintiffs' decedent, a physician, had a history of renal disease and was receiving hemodialysis every Monday, Wednesday, and Friday at the defendant Astoria Dialysis Center (hereinafter ADC). On the evening of Wednesday, October 17, 2012, the decedent presented at ADC for his scheduled appointment, but was informed that his catheter was clotted and he could not receive hemodialysis. The defendant Nimesh Patel, a nephrologist who was ADC's medical director, and nonparty Janice Valenti, a nurse who was ADC's administrator, offered the decedent several options, including having the decedent go to a nearby hospital that evening for a declotting procedure followed by hemodialysis. The decedent opted instead to see a colleague in Staten Island the following day to correct his catheter. In light of the distance between Staten Island and ADC, coupled with the fact that ADC had only one dialysis shift on Thursdays and closed at 3:00 p.m., [*2]Patel and Valenti advised the decedent that if he insisted on going to Staten Island for the declotting procedure, he should (1) receive hemodialysis at a metropolitan hospital immediately after the procedure, (2) immediately return to ADC for hemodialysis if the procedure was completed by noon, or (3) schedule a hemodialysis session at ADC's "sister" dialysis center, which would be open later than ADC. The decedent insisted he would make it back in time, but asked Valenti to schedule him for the 6:00 a.m. shift on Friday, October 19, 2012, just in case he did not make it back to ADC in time for hemodialysis on Thursday, which Valenti agreed to do.
The decedent had his catheter declotted in Staten Island the following day and left his colleague's office at 12:45 p.m. at the earliest. Afterwards, he and his son, the plaintiff Paul Gray, headed directly to ADC. Paul testified at his deposition that they arrived at ADC at approximately 1:45 p.m., but this timing has been disputed by other witnesses. Paul further testified that the decedent requested hemodialysis upon arrival, but was refused by a technician at ADC because the facility was about to close. Paul also testified that the technician asked the decedent how he was feeling and, upon learning that the decedent felt fine, told the decedent to go home and that he could wait until the next morning for his hemodialysis. The technician, by contrast, denied that the decedent ever requested dialysis that afternoon, and said that the decedent looked fine, was not in any distress, and had simply stopped by to leave documents for Valenti. It is undisputed that neither Valenti nor Patel were at ADC when the decedent presented on October 18, and no one from ADC contacted Valenti or Patel regarding the decedent's visit.
The following morning, the decedent collapsed and went into respiratory arrest shortly after arriving at ADC and before the start of his scheduled hemodialysis treatment. He ultimately died five days later from hyperkalemia and pulmonary edema. According to ADC's own medical expert, the hyperkalemia was caused by the length of time the decedent had gone without being dialyzed.
The plaintiffs commenced this action alleging medical malpractice and wrongful death against Patel, ADC, and ADC's management services provider, Atlantic Dialysis Management Services, LLC (hereinafter ADMC and, together with ADC, the corporate defendants). Patel, as well as the corporate defendants, separately moved for summary judgment dismissing the complaint insofar as asserted against each of them. The Supreme Court granted both motions, and the plaintiffs appeal.
"The requisite elements of proof in a medical malpractice action are a deviation or departure from accepted community standards of practice, and evidence that such deviation or departure was a proximate cause of injury or damage" (Castro v New York City Health & Hosps. Corp., 74 AD3d 1005, 1006). To prevail on a motion for summary judgment in a medical malpractice action, a defendant "must make a prima facie showing either that there was no departure from good and accepted medical practice, or that any departure was not a proximate cause of the patient's injuries" (Kelly v Rosca, 164 AD3d 888, 891; see Schwartzberg v Huntington Hosp., 163 AD3d 736, 737). Once a prima facie case has been established, a plaintiff, in opposition, must submit evidentiary facts or materials to rebut the defendant's prima facie showing, so as to demonstrate the existence of a triable issue of fact (see generally Stukas v Streiter, 83 AD3d 18, 24-25).
Here, Patel established his prima facie entitlement to judgment as a matter of law by submitting the affirmation of a medical expert who opined that Patel acted within the accepted standards of care in his interactions with the decedent, including in diagnosing the problem with the decedent's catheter on October 17, 2012, and in proposing several reasonable treatment options. In opposition, the plaintiffs failed to raise a triable issue of fact (see Pagano v Cohen, 164 AD3d 516). Accordingly, we agree with the Supreme Court's determination granting Patel's motion for summary judgment dismissing the complaint insofar as asserted against him.
We reach a different conclusion, however, with respect to the corporate defendants. The corporate defendants' medical expert—like Patel's expert—established, prima facie, that ADC personnel complied with the accepted standard of medical care on October 17, 2012, by diagnosing [*3]the decedent's clotted catheter and proposing several sound treatment options. However, in further opining that ADC did not depart from the accepted standard of care on October 18, 2012, the expert failed to address the import of the plaintiffs' allegations that an ADC employee affirmatively represented to the decedent, without conducting any tests and without consulting with Patel or any other medical professional, that the decedent could safely wait until the following morning for his hemodialysis treatment. Therefore, the corporate defendants' submission was insufficient to establish, prima facie, that ADC personnel did not depart from the accepted standard of care on October 18, 2012 (see Kelly v Rosca, 164 AD3d at 891).
To the extent that the expert's affirmation may be construed as suggesting that any misinformation conveyed by ADC personnel was not a proximate cause of the decedent's death because the decedent, as a physician, must be deemed to have been fully aware of the medical risks of further delaying his hemodialysis treatment, such opinion is conclusory and speculative and, therefore, insufficient to establish the corporate defendants' prima facie entitlement to judgment as a matter of law (see Yaegel v Ciuffo, 95 AD3d 1110, 1113).
Accordingly, the Supreme Court should have denied the corporate defendants' motion for summary judgment dismissing the complaint insofar as asserted against them, as they failed to meet their prima facie burden of proof (see Castro v New York City Health & Hosps. Corp., 74 AD3d at 1007). Although we need not consider the sufficiency of the plaintiffs' opposing papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853), we note that the court, in characterizing the affirmation of the plaintiffs' expert as unsupported by the factual record, improperly resolved disputed issues of fact in favor of the defendants, including the time at which the decedent arrived at ADC on October 18, 2012, whether the decedent was or should have been expected for hemodialysis treatment that day, and whether the decedent actually requested and was refused hemodialysis services that day.
BALKIN, J.P., CHAMBERS, COHEN and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court